# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | **Case No. 3:10-cr-00242-1** |
| v. | ) | |
| | ) | **Judge Nixon** |
| | ) | |
| DANIEL BRUCE LADEAU | ) | |

## ORDER

Pending before the Court is the United States of America's ("Government") Motion to Reconsider Order to Dismiss Indictment ("Motion to Reconsider"), filed on May 16, 2012 (Doc. No. 95), to which Defendant Daniel Bruce LaDeau filed a Response on May 29, 2012 (Doc. No. 105), along with attachments (Doc. Nos. 105-1 to 105-2). The Government filed a Reply with attachments on June 11, 2012 (Doc. No. 111), and Defendant filed a Sur-Reply on June 19, 2012 (Doc. No. 112). Also pending are the Government's Motion to Stay, filed on May, 29, 2012 (Doc. No. 104); Emergency Motion to Rule on the Pending Motion to Stay, filed on May 31, 2012 (Doc. No. 108); and Motion for Status Conference, filed on September 25, 2012 (Doc. No. 113), all of which are now **TERMINATED AS MOOT** based on this order. Further, the Court **DENIES** the Government's Motion to Reconsider for the reasons stated herein.

## I.    BACKGROUND

Defendant was indicted on August 29, 2010, on a charge of knowingly possessing a computer and computer media containing images and videos of child pornography that had been transported in interstate commerce, in violation of 18 U.S.C. § 2252A(a)(5)(A). (Doc. No. 13.) The sentencing range for this charge is zero to ten-years imprisonment. 18 U.S.C.A. § 2252A(b)(2) (West 2009). Defendant was arrested on September 7, 2010, and detained pending resolution of the charges against him (Doc. No. 3). Defendant filed a Supplemental Motion to

Suppress Evidence on March 16, 2011 ("Supplemental Motion"), in which he sought to suppress the contents of a cell phone seized from his person on August 27, 2010, statements he made during an interview with police the same day, and USB storage drives recovered from his residence. (Doc. No. 33.) As grounds for the suppression, Defendant alleged constitutional violations that occurred when police initially interviewed him. (Doc. Nos. 33, 46.) On September 28, 2011, the Court entered an Order granting Defendant's Supplemental Motion, thereby suppressing Defendant's cell phone and any images it contained, the statements Defendant made during the August 27, 2010, interview with police, and the USB storage drives found at his residence. (Doc. No. 60 at 27.) The Government did not appeal this decision. After Defendant's Motion to Suppress was granted, Defendant was released from prison on certain conditions, including restrictions on his ability to "associate, either directly or indirectly, with children who appear to be under the age of 18," a prohibition on possessing or using a computer or "any device with access to any online computer service," and a curfew monitored by electronic monitoring devices. (Doc. No. 65.)

The case was set for jury trial on November 15, 2011. (Doc. No. 66.) On November 10, 2011, a grand jury returned a superseding indictment against Defendant, charging him with knowingly receiving child pornography, or any material that contains child pornography, that has been mailed, or shipped or transported in interstate commerce by any means, including by computer, in violation of 18 U.S.C. § 2252A(a)(2). (Doc. No. 68.) The sentencing range for the charge filed in the superseding indictment is, five to twenty-years imprisonment. 18 U.S.C.A. § 2252A(b)(1) (West 2009). Defendant filed a Motion to Dismiss the Superseding Indictment on November 14, 2011, based on vindictive prosecution, arguing that the charge in the superseding indictment increased Defendant's potential punishment by adding a five-year mandatory minimum to his sentencing range. (Doc. No. 72.) Defendant also argued that the superseding

2

indictment should be dismissed on the grounds of prejudicial pre-indictment delay. (*Id.*) The Government filed a Response on November 28, 2011 (Doc. No. 78); Defendant filed a Reply on November 30, 2011 (Doc. No. 80); and the Government filed a Sur-Reply on December 19, 2011 (Doc. No. 83). The Court held a hearing on Defendant's Motion to Dismiss on January 5, 2012 (Doc. No. 92), and on May 9, 2012, dismissed the superseding indictment against Defendant on the grounds of vindictive prosecution (Doc. No. 88). The Government filed a Notice of Appeal on the same day. (Doc. No. 89.) Subsequently, the Government filed a motion to voluntarily dismiss the appeal. (Doc. No. 96.) The Sixth Circuit dismissed the Government's appeal, and the Government filed the instant Motion to Reconsider on May 16, 2012 (Doc. No. 90). Defendant filed a Response on May 29, 2012 (Doc. No. 91), and the Government filed a Reply on June 11, 2012 (Doc. No. 111). Defendant then filed a Sur-Reply on June 19, 2012. (Doc. No. 112.)

## II.   LEGAL STANDARD

Although the Federal Rules of Criminal Procedure make no provision for motions to reconsider, "Courts adjudicating motions to reconsider in criminal cases typically evaluate such motions under the same standards applicable to a civil motion to alter or amend judgment pursuant to Fed. R. Civ. P. 59(e)." *United States v. Titterington*, No. CR. 2–20165, 2003 WL 23924932, at *1 (W.D. Tenn. May 22, 2003) (citing *United States v. Sims* No. CR. 00–193 MV, 2003 WL 1227571, at *4 (D. N.M. Mar. 11, 2003), *United States v. Thompson*, 125 F. Supp. 2d 1297 (D. Kan. 2000)). Under Federal Rule of Civil Procedure 59(e), the Sixth Circuit has held motions to alter or amend judgment "may be granted if there is a clear error of law, newly discovered evidence, an intervening change in controlling law, or to prevent manifest injustice." *GenCorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999) (internal citations omitted). "This is an 'extraordinary' notion and 'is seldom granted because it contradicts notions

3

of finality and repose.'" *AIA Eng'g Ltd. v. Magotteaux Int'l S/A*, No. 3:09-cv-00255, 2012 WL 4442665, at *8 (M.D. Tenn. Sept. 21, 2012) (quoting *Waiters v. City of Cleveland*, No. 1:08-CV-2006, 2009 WL 3063384, at *1 (N.D. Ohio, Sept. 24, 2009)). The motion "is proper only if it contains 'an argument or controlling authority that was overlooked or disregarded in the original ruling, presents manifest evidence or argument that could not previously have been submitted, or successfully points out a manifest error of fact or law.'" *Auday v. Wet Seal Retail, Inc.*, No. 1:10–CV–260, 2012 WL 124080, at *1 (E.D. Tenn. Jan. 17, 2012) (quoting *Davie v. Mitchell*, 291 F. Supp. 2d 573, 634 (N.D. Ohio 2003)).

"A Rule 59(e) motion 'may not be used to argue a new legal theory.'" *Roger Miller Music, Inc. v. Sony/ATV Publ'g, LLC*, 477 F.3d 383, 395 (6th Cir. 2007) (quoting *FDIC v. World Univ., Inc.*, 978 F.2d 10, 16 (1st Cir. 1992)). "Rather, a motion under Rule 59(e) 'must either clearly establish a manifest error of law or must present newly discovered evidence.'" *Id.* (quoting *World Univ., Inc.*, 978 F.2d at 16). "Rule 59(e) motions are aimed at *re* consideration, not initial consideration. Thus, parties should not use them to raise arguments which could, and should, have been made before judgment issued." *World Univ., Inc.*, 978 F.2d at 16; *see also Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998) (emphasis in original) (internal citations omitted). The Fourth Circuit has held that "[w]hen the evidence forming the basis for a party's motion for reconsideration was in the movant's possession at the time of the initial hearing . . . the movant must provide a legitimate reason for failing to introduce that evidence prior to the court's ruling." *United States v. Dickerson*, 166 F.3d 667, 679 (4th Cir. 1999).

## III.   ANALYSIS

The Government argues that the Court's Order granting Defendant's Motion to Dismiss, for vindictive prosecution, was "not consistent with the law or the facts," based on five main

points: (1) the Court's finding—that prosecutors had a stake in Defendant's Motion to Suppress and that the Government's subsequent substitution of harsher charges prior to trial was presumptively vindictive—conflicts with *United States v. Goodwin*, 457 U.S. 368 (1982), and *Bordenkircher v. Hayes*, 434 U.S. 357 (1978); (2) in finding that a prosecutorial stake existed based on the interest of the Government, rather than the interest of the individual prosecutor, the Court's finding conflicts with the relevant legal standard; (3) the Court's determination that the superseding indictment was unreasonable relies on unsubstantiated assumptions and legal errors; (4) the Court's conclusion that, following the Motion to Suppress, the Government's decision to indict harsher charges was unreasonable when other alternative charging options existed, amounted to error of law; and (5) the Court's shifting the burden to the Government, without permitting the Government the opportunity to rebut the presumption of vindictiveness, constituted error of law. (Doc. No. 95 at 2-3.) The Government also cites *Davis v. United States*, 131 S. Ct. 2419, 2425 (2011) for the assertion that, by granting Defendant's motion to dismiss the indictment, the Court has bestowed a windfall upon Defendant which "has the 'bottom-line effect . . . [of] set[ting] the criminal loose in the community without punishment.'" (Doc. No. 95 at 1-2.)

Under the doctrine of vindictive prosecution, a court may dismiss an indictment if the defendant shows either "actual vindictiveness" or "a realistic likelihood of vindictiveness." *United States v. Dupree*, 323 F.3d 480, 489 (6th Cir. 2003) (citations omitted). To demonstrate a realistic likelihood of vindictiveness, the defendant must make a showing of four factors: "(1) exercise of a protected right; (2) a prosecutorial stake in the exercise of that right; (3) unreasonableness of the prosecutor's conduct; [and] (4) the intent to punish the defendant for the exercise of the protected right." *United States v. Suarez*, 263 F.3d 468, 479 (6th Cir. 2001) (citing *Nat'l Eng'g & Contracting Co. v. Herman*, 181 F.3d 715, 722 (6th Cir. 1999) (stating that

5

the presence of the first three elements can suggest evidence of the fourth element)). Upon the defendant establishing a realistic likelihood of vindictiveness, the burden shifts to the prosecution to justify the challenged action through objective evidence. *Bragan v. Poindexter*, 249 F.3d 476, 482 (6th Cir. 2001).

### A. *Prosecutorial Stake and Pretrial Presumption of Vindictiveness*

The Government first claims the Court erred in holding that the Government had a stake in the outcome of Defendant's Motion to Suppress, based on *United States v. Goodwin.* (Doc. No. 95 at 5-6.) In its Order, the Court determined the Government had a stake in Defendant's Motion to Suppress because the evidence subject to suppression formed the basis of the Government's sole charge against Defendant. (Doc. No. 88 at 9.)

The Government also argues that the Court erred in holding that the substitution of charges, which carry increased penalties, was presumptively unreasonable under *Goodwin* and *Bordenkircher v. Hayes.* (Doc. No. 95 at 6.) In its Order, the Court assessed the following facts to reach its conclusion that the Government's superseding indictment amounted to unreasonable conduct: that the Government initially only indicted Defendant on one charge with no mandatory minimum sentence; that the Government substituted, rather than added, the charge in the superseding indictment; that the substituted offense carried a mandatory minimum where the original offense did not; and that alternative charging options, without mandatory minimums, were available to the Government. (Doc. No. 88 at 9, 11.)

### 1. Prosecutorial Stake in a Motion to Suppress

The Government argues that language in *Goodwin*, 457 U.S. at 381, forecloses the possibility that prosecutors have a stake in preventing defendants from filing pretrial motions to suppress, regardless of the potential consequences of suppression, because "[i]t is unrealistic to assume that a prosecutor's probable response to [motions to suppress evidence prior to trial] is to

seek to penalize and deter." (Doc. No. 95 at 6.) The Government further asserts that "[n]otwithstanding this clear language, the Court made exactly this assumption in its Order, without conducting any independent legal analysis." *Id.*

The Court first considers whether prosecutorial stake can ever exist in a motion to suppress evidence. The Government correctly asserts that no federal court has ever found prosecutorial stake in a motion to suppress. (Doc. No. 95 at 5.) However, there is also no federal case holding that prosecutorial stake cannot exist in a motion to suppress. Because there is no case directly on point, the Court's holding—that the Government had a stake in Defendant's Motion to Suppress—was not clear error. Where no controlling precedent exists, the Court's decision necessarily creates a novel result. The Government's argument, that the novel result in the Court's Order conflicts with *Goodwin*, is not persuasive, as *Goodwin*'s facts did not include a motion to suppress and its holding did not address prosecutorial stake in that circumstance. *See Goodwin*, 457 U.S. at 383-84.

The Court next addresses the Government's argument that *Goodwin* forecloses the possibility of prosecutorial stake in a pretrial motion to suppress. This per se rule, suggested by the Government, conflicts with holdings in at least five circuits, including the Sixth Circuit, which have held that *Goodwin* requires courts to assess the facts of each case to determine whether prosecutorial stake is sufficient to create a presumption of vindictiveness at the pretrial stage.[1] For instance, in *Goodwin*, the Court assessed the timing of the prosecutor's action and

---

[1] *See United States v. Suarez*, 263 F.3d 468, 479 (6th Cir. 2001); *United States v. Raymer*, 941 F.2d 1031, 1040 (10th Cir. 1991) (noting that although the Supreme Court has yet to apply the presumption of vindictiveness in a pretrial setting, it may exist in pretrial situations "which are genuinely distinguishable from *Goodwin* and *Bordenkircher*" under a totality of the circumstances test); *United States v. Meyers*, 810 F.2d 1242, 1245-46 (D.C. Cir. 1987) (recognizing that a presumption of vindictiveness "will lie in the pretrial setting if the defendant presents facts sufficient to show a realistic likelihood of vindictiveness"); *United States v. Krezdorn*, 718 F.2d 1360, 1364-65 (5th Cir. 1983) ("The judicial history of decisions involving . . . prosecutorial vindictiveness is now clear enough to teach that it is a mistake to measure cases in this area of the law against fixed gauges. The proper solution is not to be found by classifying prosecutorial decisions as . . . being made pre- or post-trial."); *United States v. Gallegos-*

7

the nature of the right asserted by the defendant, in its analysis of whether prosecutorial stake was sufficient to warrant a presumption of vindictiveness. *Goodwin*, 457 U.S. at 381-82. Subsequently, in *Suarez*, the Sixth Circuit looked at the additional burden on the prosecution following the defendant's motions beyond the original burden of trial, in its assessment of prosecutorial stake. 263 F.3d at 480.

Here, the Court properly applied a fact-specific analysis to determine whether the Government had a stake in Defendant's Motion to Suppress. The *Goodwin* Court found that the defendant's request for jury trial did not impose a substantial burden on the prosecutor because the added burden to prepare for a jury trial was insignificant compared to the burden of preparing for trial in the first place. 457 U.S. at 382. Based on a parallel analysis in this case, the Court found the added burden on the Government to prepare for trial following the suppression of evidence was substantial because the evidence at issue was central to the Government's ability to prove its case. (Doc. No. 88 at 9.) Therefore, the Court determined that the Government had a significant stake in Defendant's Motion to Suppress. (*Id.*) The Government concedes that Defendant's successful motion to suppress "did not make the possession of child pornography *harder* to prove—it made it *impossible* to prove." (Doc. No. 95 at 9 (emphasis in original).) Therefore, the Court finds no clear error of law in its previous holding that the Government had a significant stake in Defendant's Motion to Suppress, based on its analysis under *Goodwin*'s framework.

2. Presumption of Vindictiveness

---

*Curiel*, 681 F.2d 1164, 1168-69 (9th Cir. 1982) (holding that the exercise of routine or necessary pretrial defense motions does not meet the threshold for a presumption of vindictiveness without more, such as the timing and nature of the defendant's act).

The Government also argues that the Court erred by finding a pretrial presumption of vindictiveness in the Government's decision to indict Defendant on harsher charges following Defendant's successful Motion to Suppress. (Doc. No. 95 at 6.) The Government reasons that because the pertinent facts of this case are indistinguishable from *Goodwin* and *Bordenkircher*— which both found no presumption of vindictiveness pretrial—the Court was precluded from finding a presumption based on the elevated charges. (Doc. No. 95 at 6-8.)

The Court first turns to the standard set in *Bordenkircher* for when a pretrial presumption of vindictiveness is inappropriate. The Court agrees with the Government's assertion, that *Bordenkircher* held the practice of prosecutors threatening criminal defendants with harsher penalties for rejecting plea bargains and exercising their right to have a trial is not inherently vindictive. (Doc. No. 95 at 7.) However, the *Bordenkircher* Court's analysis focused on the "'give-and-take negotiation common in plea bargaining between the prosecution and defense, which arguably possess relatively equal bargaining power,'" noting that "in the 'give-and-take' of plea bargaining, there is no . . . element of punishment or retaliation so long as the accused is free to accept or reject the prosecution's offer." *Bordenkircher*, 434 U.S. at 362-63 (quoting *Parker v. North Carolina*, 397 U.S. 790, 809 (1970)). Because of the unique circumstances surrounding plea bargaining, the Court carefully framed a narrow holding, limiting its reach to enhanced charges following a defendant's rejection of a plea. *Id.* at 365 (holding only that in the case at hand, the conduct of the prosecutor in plea bargaining did not violate the defendant's Due Process rights). Moreover, this Court and the Sixth Circuit have affirmed the limits of *Bordenkircher* by finding that "*Bordenkircher* 'must be confined to the plea bargaining context in which it arose' and that retaliatory behavior in the pre-trial stage [is] still subject to judicial scrutiny." *United States v. Thomas*, No. 1:06-00009, 2007 WL 2914912, at *3 (M.D. Tenn. Oct. 4, 2007) (quoting *Andrews*, 633 F.2d at 456).

The Court, therefore holds that *Bordenkircher* is not controlling based on the facts of this case, and that the Court's finding was not a clear error of law. As the Government admits, it never offered Defendant a plea. (Doc. No. 95 at 7.) Therefore, the rationale of equal bargaining power that supported the *Bordenkircher* decision was not present in this case. Therefore, the Court holds it was not clearly erroneous for the Court to reach a different result than *Bordenkircher*, based on the clear factual distinctions of this case.

The Court next turns to the standard for a pretrial presumption of vindictiveness set out in *Goodwin*. The Government argues this case is indistinguishable from *Goodwin* because in both cases the prosecutor sought harsher charges following the Defendant's exercise of a protected, pretrial right. (Doc. No. 95 at 7.) In *Goodwin*, the defendant rejected a plea prior to exercising his right to a jury trial. *Goodwin*, 457 U.S. at 370-71. Once the defendant in *Goodwin* requested a jury trial, the case was transferred from a low-level Department of Justice attorney with jurisdiction only over petty crimes, to the United States Attorneys Office, which subsequently filed the elevated charge. *Id.* The Court found that, although an opportunity for vindictiveness existed on the facts, "[t]he possibility that a prosecutor would respond to a defendant's pretrial demand for jury trial by bringing charges not in the public interest that could be explained only as a penalty imposed on the defendant is so *unlikely* that a presumption of vindictiveness is not warranted." *Id* at 384 (emphasis in original). Because *Goodwin* determined that a presumption of vindictiveness did not exist using a fact-based analysis, the Court today holds there was no clear error of law in the Court's determination that the distinguishable facts of this case created a realistic likelihood of vindictiveness. The factual differences between *Goodwin* and this case—including the lack of plea bargaining and the amount of time between when the United States Attorneys Office became involved with the case and when the superseding indictment was filed—could reasonably lead this Court to come to a different conclusion than the Court in

*Goodwin.* Therefore, finding a presumption of vindictiveness was not clearly erroneous based on the facts of this case.

### B. *Focus of the Court's Prosecutorial Stake Analysis*

Next, the Government asserts that the Court erred by incorrectly focusing on the stake of the "United States in its general law enforcement duties" rather than "that of the specific prosecutor involved in the case." (Doc. No. 95 at 11.) In its Order, the Court found that "the United States had a significant stake in the outcome of Defendant's suppression motion, as the suppression motion concerned the evidence forming the basis of the United States' original charge." (Doc. No. 88 at 9.)

The Government argues that to find a presumption of vindictiveness, the Court must find that the specific prosecutor trying the case had a stake in Defendant's Motion to Suppress. (Doc. No. 95 at 11.) Gleaning support from dictum in *United States v. Mathis*, No. 97-6499, 1999 WL 98465, at *2 (6th Cir. Jan. 29, 1999), the Government concludes that because Defendant did not claim a specific prosecutor had a personal stake in the suppression motion, the Court should have denied Defendant's Motion to Dismiss. (Doc. No. 95 at 12 ("[T]he presumption of vindictiveness arises in part from assumptions about *an individual's* personal stake in the proceedings, [and that] if *two* different prosecutors are involved, a presumption of vindictiveness . . . may be inappropriate.") (emphasis in original).) Further, the Government argues that because multiple prosecutors were involved in the decision to file the superseding indictment in this case, no prosecutorial stake "personal to the prosecutor–rather than to the government as a whole" existed. (Doc. No. 95 at 11-12.)

The Court looks to Supreme Court precedent to determine whose interests are appropriately analyzed in a prosecutorial stake inquiry. The Supreme Court definitively

addressed the issue of whose stake is involved in a prosecutorial vindictiveness analysis in

*Thigpen v. Roberts*:

> It might be argued that if two different prosecutors are involved, a presumption of vindictiveness, which arises in part from assumptions about the individual's personal stake in the proceedings, is inappropriate. On the other hand, to the extent the presumption reflects "institutional pressure that . . . might . . . subconsciously motivate a vindictive prosecutorial . . . response to a defendant's exercise of his right to obtain a retrial of a decided question," it does not hinge on the continued involvement of a particular individual. A district attorney burdened with the retrial of an already-convicted defendant might be no less vindictive because he did not bring the initial prosecution. Indeed, *Blackledge* referred frequently to actions by "the State," rather than "the prosecutor."

468 U.S. 27, 31 (1984) (quoting *Goodwin*, 457 U.S. at 377). The Court agrees with the

Government that the Sixth Circuit has found that "the participation of different prosecuting

personnel tends to negate a claim of vindictive prosecution." *Mathis*, 1999 WL 98465, at *2.

More recently, however, the Sixth Circuit has upheld the validity of *Thigpen*'s analysis by

holding that "the involvement of two different prosecutors, though relevant, might not always

rebut the presumption [of vindictiveness]." *Bragan*, 249 F.3d at 482.

Under *Thigpen*, *Blackledge*, and *Goodwin*, an analysis of prosecutorial stake may

properly focus on the stake of the Government in its prosecutorial capacity. Therefore, the

Court's holding was not clearly erroneous. In its original Order, the Court used the terms "the

United States" and "the Government" interchangeably to refer to the prosecution, which has been

handled by the United States Attorneys Office since the inception of the case. (*See, e.g.,* Doc.

No. 88 at 9 ("as the suppression motion concerned the evidence forming the basis of the *United

States'* original charge . . .").) Therefore, the Court finds its determination that a presumption of

vindictiveness existed, based on the stake of the Government, rather than an individual

prosecutor, was not a clear error of law.

*C. Legal Basis Underlying the Unreasonableness of the Government's Conduct and Establishment of a Presumption of Vindictiveness*

### 1. Unreasonableness of the Superseding Indictment

Third, the Government claims that the Court's analysis regarding the unreasonableness of the superseding indictment was in error, because it did not give proper deference to prosecutorial discretion or the other "relevant factors at play in the pretrial process." (Doc. No. 95 at 12.) The Court, in its Order, reasoned that the timing of the superseding indictment; the harsher penalty associated with the new charge; and the fact that the Government substituted, as opposed to added, the harsher charge, together demonstrated that filing the superseding indictment amounted to unreasonable conduct. (Doc. No. 88 at 9.)

The Government asserts that under *Goodwin*, "[a] charging decision does not levy an improper 'penalty' unless it results *solely* from the defendant's exercise of a protected legal right, rather than the prosecutor's normal assessment of the societal interest in prosecution." 457 U.S. at 380 n.11. Therefore, the Government argues that its conduct can only be found unreasonable if the *sole* reason for the superseding indictment is retaliation. (Doc. No. 95 at 12.) The Government claims that in this case, because there were numerous relevant factors influencing its charging decision, the Court's determination that the superseding indictment was unreasonable, was in error. *Id.* The Government continues that the Court's failure to give weight to prosecutorial discretion as a valid reason for the new charges was erroneous. *Id.* Additionally, the Government concludes that in finding vindictiveness, the Court has "created a rule whereby the United States must charge the defendant with the entire scope of his wrongdoing in the initial indictment or risk a successful motion to dismiss for apparent vindictiveness later." (Doc. No. 95 at 17.)

The Court first turns to the standard for unreasonable conduct in a presumption of vindictiveness analysis. The Sixth Circuit has held that, in general, for a Court to find a prosecutor's conduct unreasonable, the superseding indictment "must add additional charges or substitute more severe charges based on the same conduct charged less heavily in the first indictment." *Bragan*, 249 F.3d at 481. Although the Sixth Circuit has made it clear that "[t]he mere presence of a superseding indictment bringing additional charges is not sufficient to be presumptively unreasonable," *Suarez*, 263 F.3d at 480 (citing *Goodwin*, 457 U.S. at 380), the Sixth Circuit is among multiple courts that have held that in certain circumstances, substituting new charges that are more severe, does constitute unreasonable conduct. *See, e.g., Turner v. State of Tennessee*, 940 F.2d 1000, 1001 (6th Cir. 1991) (finding unreasonable a prosecutor's choice in offering a second plea with a harsher sentence after the defendant rejected the first plea due to ineffective assistance of counsel); *Krezdorn*, 718 F.2d at 1364-65; *Gallegos-Curiel*, 681 F.2d at 1168-69; *United States v. Motley*, 655 F.2d 186, 189 (9th Cir. 1981) (holding the substitution of a more severe indictment, itself, raises the appearance of vindictiveness).

The Court therefore finds no clear error of law in its determination that the Government's behavior surrounding the superseding indictment was unreasonable. While the Government argued that its purpose in the superseding indictment was to "avail itself of alternative evidence, not to punish the defendant for the exercise of a right," (Doc. No. 78 at 3-4), its justification did not address the Court's stated concern about the increased severity of the new charge (Doc. No. 88 at 9). The Court's finding was reasonable and supported by precedent. Therefore it was not a clear error of law.

The Court next addresses the Government's argument that the Court, through its Order, has created a per se rule usurping prosecutorial discretion by forcing the Government to charge defendants with all conceivable charges in its first indictment to avoid a dismissal for vindictive

prosecution. When assessing the reasonableness of a superseding indictment, courts must "reconcile two conflicting rules of law: (1) prosecutors have and need broad discretion to file charges where there is probable cause that someone has broken the law; [and] (2) vindictive conduct by persons with the awesome power of prosecutors (and judges) is unacceptable and requires control." *Andrews*, 633 F.2d at 453. Although deference must be given to prosecutorial charging decisions, the Sixth Circuit has held "'[t]he broad discretion accorded prosecutors in deciding whom to prosecute is not unfettered, and a decision to prosecute may not be deliberately based upon the exercise of protected statutory rights.'" *Bragan*, 249 F.3d at 481 (quoting *United States v. Adams*, 870 F.2d 1140, 1145 (6th Cir. 1989)). Once a court finds the defendant has shown objective evidence of prosecutorial stake and unreasonable conduct to infer a realistic likelihood of vindictiveness, the burden shifts to the prosecutor to rebut the presumption with objective facts. *See id.* at 457; *Meyer*, 810 F.2d at 1246.

The Court finds no clear error of law in its unreasonableness analysis. It did not create a rule that a superseding indictment substituting more severe charges is per se inappropriate, but rather, assessed the facts of this case as prescribed by the Supreme Court and the Sixth Circuit. The Court found that under the *circumstances of this case*, a presumption of vindictiveness was shown based on the Government's charging decision. Moreover, the Government failed to present objective evidence to show why its charging decision was not vindictive. (Doc. No. 88 at 16.) The Court's Order does not require the Government to change the way it makes charging decisions in the future, because if a defendant raises a claim of vindictive prosecution and the Court finds a realistic likelihood of vindictiveness, the Government can successfully rebut the presumption by offering objective evidence. Each case going forward will be judged on its facts, as prescribed by the Supreme Court and as the Court did in this case. Thus, the Court's Order was not clearly error of law.

## 2. The Court's Finding of a Presumption of Vindictiveness

The Government argues that the Court erred by assuming that "new charges can only be brought if new evidence was discovered after the time of the original indictment or there was a 'previous legal impossibility.'" (Doc. No. 95 at 15-16 (citing Doc. No. 88 at 11).) In its Order, the Court determined that the Government did not make a showing that it had discovered new evidence, or that it was previously legally impossible to charge Defendant with the superseding indictment. (Doc. No. 88 at 11.) However, in finding that a presumption of vindictiveness existed based on the Government's superseding indictment, the Court assessed the timing and increased severity of the new charge, as well as the fact that alternative charging options were available. (*Id.*)

The Government contends that the Court incorrectly used the "newly discovered evidence" and "previous legal impossibility" factors from *Andrews* to determine that a presumption of vindictiveness existed, rather than as weight in a rebuttal argument. (Doc. No. 95 at 16.) The Government further argues that the Court erred by using the *Andrews* factors as an exhaustive list instead of considering other potential non-vindictive reasons for the Government's pretrial change in charging decision. (*Id.*)

First, the Court assesses what factors are properly used to determine that a presumption of vindictiveness exists. A Court may find a "presumption of vindictiveness by applying the 'realistic likelihood of vindictiveness,' standard which focuses on the prosecutor's 'stake' in deterring the exercise of a protected right and the unreasonableness of his actions." *United States v. Poole*, 407 F.3d 767, 774 (6th Cir. 2005) (quoting *Dupree*, 323 F.3d at 489); *see also Bragan*, 249 F.3d at 481-82. The Sixth Circuit has found that a court must "assess the fact situation before it" to determine whether a realistic likelihood of vindictiveness exists. *Andrews* 633 F.2d at 453-54. The Court finds its determination that a presumption of vindictiveness

16

existed was not a clear error of law because its determination relied on the increased severity and timing of the superseding indictment, and the alternate charging options the Government forewent. In its analysis, the Court found the Government had a stake in Defendant's Motion to Suppress and that the Government's conduct following Defendant's exercise of a protected right was unreasonable based on the increased severity of the new charge. (Doc. No. 88 at 9-11; *see supra* Parts III.A.1-2.) Conducting a factual analysis under the framework developed by the Sixth Circuit was appropriate and the Court finds no clear error of law in its previous determination that a reasonable likelihood of vindictiveness existed.

The Court next looks at what evidence can be used to rebut a finding of a presumption of vindictiveness. As *Andrews* makes clear, "only objective, on-the-record explanations can suffice to rebut a finding of realistic likelihood of vindictiveness." 633 F.2d at 456. As the Government points out, in *Andrews*, 633 F.2d at 456 n.10, the Sixth Circuit states that discovery of previously unknown evidence and previous legal impossibility are two potential objective explanations that might serve to rebut a presumption of vindictiveness. (Doc. No. 95 at 15-16.)

In the Court's determination that the Government did not rebut the presumption, there was no clear error of law, because the Court found the Government failed to offer an objective explanation for its charging decision. (Doc. No. 88 at 12-13.) As the Government points out, there are numerous potential explanations that might satisfy its burden to rebut a presumption of vindictiveness. (Doc. No. 95 at 16.) The Court, however, determined that because the Government substituted a charge carrying a more serious penalty when other options existed, under *Motley*, 655 F.2d at 189, it needed objectively to justify its decision to the increase in severity of the new charge. (Doc. No. 88 at 13.) The Court found that in addition to the Government's inability to justify its conduct based on newly discovered evidence or previous legal impossibility, the Government's only stated reason for choosing the more severe charge

was that it was "the best case" against Defendant. (*Id.*) Even when the possibility of alternative charging options—that did not increase Defendant's criminal exposure—were brought to the Government's attention, it never gave the Court any objective reasons why the more severe charge made the best case. (*Id.*) After conducting an analysis under the guidance of *Andrews* and *Motley*, the Court did not find the Government gave *any* objective explanations for its superseding indictment. Because the Court conducted an inquiry into the sufficiency of the Government's rebuttal, as prescribed by *Andrews*, there was no clear error of law in the Court's decision.

### D. Alternative Charging Options Following the Dismissal of Evidence

#### 1. Unreasonableness of the Government's Conduct

Next, the Government claims that the Court erred in determining that the Government's decision to file a superseding indictment against Defendant—charging a crime with a harsher penalty than the original charge—was unreasonable when alternative charging options existed that would not increase Defendant's potential incarceration. (Doc. No. 95 at 3.) In its Order, the Court determined that, in part because the Government had multiple charging options, its decision to indict Defendant on the only charge that carried a harsher penalty, was unreasonable. (Doc. No. 88 at 11.)

The Government first argues that since the enactment of 18 U.S.C.A. § 2252A (West 2009)—which deals exclusively with child pornography—charging defendants accused of conspiracy crimes relating to child pornography under the general conspiracy statute, 18 U.S.C. § 371 (1994), is disfavored. (Doc. No. 88 at 17.) Therefore, the Government contends that the Court erred by suggesting that § 371 was a viable charging alternative. *Id.* The Government also alleges that the Court erred in its determination that Defendant could have been properly charged under § 2252A(b)(2), because the Court failed to account for the Government's

18

prosecutorial discretion. (Doc. No. 88 at 17.) In support, the Government claims it justified its charging decision by explaining at the hearing on the Motion to Dismiss, that its evidence best fit a charge under § 2252A(b)(1). (*Id.*)

The Court first assesses whether a conspiracy crime involving child pornography can be charged under the general conspiracy statute, 18 U.S.C. § 371. The Court agrees with the Government that, with regards to statutory construction, specific statutes control over general statutes where statutory language conflicts. (Doc. No. 111 at 11.) However, the Court finds that its suggestion that the Government could have indicted Defendant under § 371 is not a clear error of law because the Court is unaware of any law, including § 2252A, *precluding* the Government from charging Defendant under § 371. Further, the Court noted that the Government argued at the hearing on the Motion to Dismiss, that § 371 is not *typically* used to prosecute child pornography cases. (Doc. No. 88 at 10.) Therefore, according to the Government's own assertion, the suggestion that the Government *could* have charged Defendant under § 371 is not clearly erroneous.

The Court next analyzes whether Defendant could have been properly charged under § 2252A(b)(2), and if the Government's failure to do so was unreasonable. The charge the Government indicted on, § 2252A(a)(2)(A), prohibits knowingly *receiving* child pornography. By contrast, the alternative charge suggested by the Court—that does not carry a harsher sentencing range than the original charges filed in this case, § 2252A(a)(5)(B)—prohibits knowingly *possessing* child pornography. *Compare* 18 U.S.C.A. § 2252A(a)(2)(A) (West 2009) *with* § 2252A(a)(5)(B) (West 2009).

The Government argues that it properly justified charging under the receiving subsection because that charge was the "best fit" for the evidence. (Doc. No 95 at 17.) However, the Court finds its determination that the Government could have indicted Defendant under §

19

2252A(a)(5)(B), is not a clear error of law. The Sixth Circuit considers possession of child pornography, § 2252A(a)(5)(B) a lesser-included offense of receiving child pornography, § 2252A(a)(2)(A). *United States v. Ehle*, 640 F.3d 689, 695 (6th Cir. 2011) ("'Receiving' child pornography necessarily requires one to 'possess' that child pornography. There are no requirements for the 'possessing' offense that are not also contained in the 'receiving' offense."). More importantly, the Sixth Circuit has held that a superseding indictment may be vindictive where the prosecution "substitutes more severe charges based on the same conduct charged less heavily in the first indictment." *Suarez*, 263 F.3d at 480. Therefore, the Court could properly find that the Government had a choice to charge an offense that did not increase the severity of the charge, and that failing to do so was unreasonable. Following the framework of the Sixth Circuit to determine the Government's conduct was unreasonable was not clearly erroneous.

2. The Government's Rebuttal of the Presumption of Vindictiveness

The Government also claims that the Court erred by failing, in its rebuttal analysis, to give weight to the argument that the Government's charging decision was reasonable because it was exercising prosecutorial discretion. (Doc. No. 95 at 15.) In its Order, the Court determined that the Government failed to rebut the presumption of vindictiveness because it failed to give more than a subjective explanation for its charging decision. (Doc. No. 88 at 13.)

The Government argues that the Court assumed the propriety of charging one crime rather than another without considering factors that potentially influenced the Government's charging decision. (Doc. No. 95 at 15.) Specifically, the Government claims it explained these issues to the Court at the hearing on the Motion to Dismiss by stating "there are significant differences between these charges. . . . [e]ach of them have different elements. Each of them are going to have different concerns [before] a Jury." (Doc. No. 92 at 10.)

20

The Court first looks at what type of justification is necessary for the Government to overcome a presumption of vindictiveness. The Sixth Circuit has stated that "[i]n determining whether the government has rebutted a presumption of vindictiveness the relevant inquiry is whether there exists objective information in the record to justify the increased sentence or additional charges." *Poole*, 407 F.3d at 776. Further, "we do not think that judges should pass on subjective good faith assertions by prosecutors . . . only objective, on-the-record explanations can suffice to rebut a finding of realistic likelihood of vindictiveness." *Andrews*, 633 F.2d at 456.

The Court finds its determination—that the Government did not sufficiently rebut the presumption of vindictiveness, based on a lack of objective evidence—was not a clear error of law. To contrast, the Sixth Circuit found in *Poole*, that the prosecution met its burden to rebut the presumption of vindictiveness by pointing to: specific holes in its case following a motion in limine suppressing evidence, how the defense was able to capitalize on those holes, and the resulting jury confusion confirmed by post-trial discussion with jurors. 407 F.3d at 776-77. Here, the Court found that the only explanations the Government gave for charging decision were that it "allowed the United States to present 'the best case' against Defendant," and that it had "probable cause to believe that defendant . . . committed conspiracy to receive child pornography." (Doc. No. 88 at 13.) The Court did not clearly err by finding that, under *Poole*, the Government did not meet its burden of proof because it failed to give any objective information justifying its conduct beyond conclusory statements that did not speak to the increased severity of the superseding indictment.

The Court next turns to the Government's argument regarding prosecutorial discretion. The Government asserts it was properly exercising its discretion to prosecute Defendant when it filed the superseding indictment, and therefore the Court, in its Order, "usurped the sort of

discretion the Supreme Court sought to maintain in *Goodwin*." (Doc. No. 95 at 15.) In assessing a rebuttal argument focused on prosecutorial discretion, the Court revisits the two conflicting *Andrews* principles of: (1) allowing prosecutors broad discretion but (2) needing to ensure power is not exercised vindictively. *See supra* Part III.C.1.

The Court finds no controlling case that addresses rebutting pretrial prosecutorial vindictiveness, based on the substitution of harsher charges, with a defense asserting prosecutorial discretion. (*See* Doc. No. 88 at 14-16.) Therefore, the Court's determination that the Government failed to meet its burden on rebuttal was not clear error of law. In its Order, the Court found persuasive, *Motley*, 655 F.2d at 189, a Ninth Circuit case, which held that once a court finds a pretrial presumption of vindictiveness, based on a superseding indictment which increases a defendant's exposure, the prosecution must not only justify the substitution of charges, but also the elevation in sentence. (Doc. No. 88 at 15 ("What the government needs to justify, however, is not the change in the nature of the charges in the indictment, but the increase in the severity of the charges in the indictment.").) The Government argues, that "there is no evidence in the record—none—to suggest the United States was not acting in response to its proper interest in prosecuting criminals." (Doc. No. 95 at 18.) However, the Court does not find this argument persuasive in light of *Motley*. "The government chose to frame a more severe indictment. That is the choice that raises the appearance of prosecutorial vindictiveness, and that is what it has failed to justify." 655 F.2d at 188-89. The Courts decision to following the guidance of the Ninth Circuit when no case controlled, was not clearly erroneous.

### E. *The Government's Obligation to Rebut the Presumption of Vindictiveness*

Finally, the Government argues that the Court erred by failing to give the Government the opportunity to rebut the presumption of vindictiveness. (Doc. No. 95 at 18.) In its Order, the Court reasoned that the Government's arguments in support of the superseding indictment did

not satisfy its burden to give objective justification, sufficient to rebut the established presumption of vindictiveness. (Doc. No. 88 at 15-16.)

The Government argues that because the Court held both that Defendant had made a sufficient showing to create a presumption of vindictiveness *and* that the Government had failed to rebut the presumption in the same Order, the Government was not put on notice that it had the burden to rebut the presumption until it was too late. (Doc. No. 95 at 18.) The Government reasons that it was under no duty to bring rebuttal evidence until the Court declared that Defendant had sufficiently established a presumption of vindictiveness. (*Id.*) Further, the Government requests that the Court now permit the Government the opportunity to present rebuttal evidence. (Doc. No. 95 at 20.)

The Court assesses what notice is necessary before the Government is required to present evidence to justify its charging decision. The Government cites to *Lankford v. Idaho*, 500 U.S. 110, 126 (1991), for the assertion that parties must be given notice of the issues to be resolved and an opportunity to be heard on those issues. (Doc. No. 95 at 18.) Although both parties filed multiple briefs and the Court held an evidentiary hearing regarding Defendant's Motion to Dismiss, the Government claims it was never put on explicit notice that Defendant had established a presumption of vindictiveness. (Doc. No. 19.)

The Court finds that its holding that the Government did not satisfy its burden was not a clear error of law. The Government was on notice that the issue to be resolved was whether its superseding indictment established a presumption of vindictiveness, based on Defendant's Motion to Dismiss. Further, the fact that the Court held an evidentiary hearing, put the Government on notice that Defendant had made a *prima facie* showing of the elements of vindictive prosecution. *See United States v. Napue*, 834 F.2d 1311, 1329 (7th Cir. 1987) ("[i]n order to obtain an evidentiary hearing . . . a defendant must make 'a *prima facie* case based on

facts sufficient to raise a reasonable doubt about the prosecutor's purpose.'" (citation omitted). The Court was not required to issue an intermediary order, informing the Government that Defendant had met his burden, and the Government was given ample opportunity to put forth objective evidence that its actions were not vindictive. *See Wilson*, 120 F. Supp. 2d at 553; *Bragan*, 249 F.3d at 480-81. Therefore, the Court holds it was not clearly erroneous for the Court to determine the Government failed to meet its burden.

The other case the Government claims supports its argument, *United States v. Scheffer*, 523 U.S. 303 (1998), cited for the proposition that "the parties must be provided an opportunity to be heard." (Doc. No. 95 at 18.) However, *Scheffer* referred to an evidentiary rule which summarily excluded polygraph expert testimony. 523 U.S. at 329-32. Here, the Government was given ample opportunity to be heard in its briefing and at the evidentiary hearing. The Government, in fact, did present subjective justifications for its decision in filing the superseding indictment. (*See* Doc. No. 92.) Therefore, the Court did not err in holding that the Government had not met its burden to adequately rebut the presumption based on the arguments it gave in its briefs and oral arguments.

Lastly, because the Court finds no clear error in its previous holding, it has no basis to reopen arguments on Defendant's Motion to Dismiss. As stated above, "when the evidence forming the basis for a party's motion for reconsideration was in the movant's possession at the time of the initial hearing, the movant must provide a legitimate reason for failing to introduce that evidence prior to the court's ruling." *Wilson*, 120 F. Supp. 2d at 553 (citing *Dickerson*, 166 F.3d at 679). The Court finds the Government has failed to provide a legitimate reason for failing to assert any outstanding rebuttal arguments in its briefing or in oral argument on Defendant's Motion to Dismiss.

## IV.  CONCLUSION

For the foregoing reasons, the Government's Motion to Reconsider Order to Dismiss Indictment is hereby **DENIED**. The Government's Motion to Stay (Doc. No. 104), Emergency Motion to Rule on the Pending Motion to Stay (Doc. No. 108), and Motion for Status Conference (Doc. No. 113) are **TERMINATED AS MOOT**.

It is so **ORDERED**.

Entered this _____ day of November, 2012.

JOHN T. NIXON, SENIOR JUDGE
UNITED STATES DISTRICT COURT